* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged injuries sustained by Robert McCarty, an employer-employee relationship existed between Robert McCarty and USF Holland, Inc.
3. At the time of the alleged injuries, USF Holland, Inc. was self-insured and Constitution State Service Company was their servicing agent.
4. At the time of the alleged injuries Robert McCarty had an average weekly wage of $815.42 yielding a compensation rate of $543.35.
5. The parties stipulate into evidence as Stipulated Exhibit #1, the Pre-Trial Agreement as modified and properly initialed by the parties.
6. The parties stipulate into evidence as Stipulated Exhibit #2, trial notebook including employee's employment record, photos of property damage, and lien documentation.
7. The depositions of Steven R. Costa, D.C., Timothy Todd, M.D., Kevin Speer, M.D., W. Dickson Schaefer, M.D., and Hiren Patel, M.D. were received into evidence.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner plaintiff was thirty-four years of age and had been employed by defendant as a truck driver since November of 1999.
2. Plaintiff alleged on a Form 18 that on August 31, 2001 he sustained an injury to his right knee when he slipped and fell, striking his right knee on the back of his truck, while the course and scope of his employment with defendant. However, according to plaintiff's supervisor's report, plaintiff felt his right knee "pop" when he stepped on the ICC bumper. Further, in the accident report, plaintiff wrote that he twisted his knee getting out of the back of his trailer.
3. On August 31, 2001 plaintiff sought treatment for his knee problems and was treated conservatively by Timothy Andrew Todd, M.D., a general practitioner with Carolina Family and Urgent Care Center. The medical records indicate plaintiff reported that he stepped down from his vehicle and felt his knee "pop". While plaintiff testified that he discussed in detail the mechanism of the injury with Dr. Todd, who treated plaintiff five times during August and September 2001 for his right knee pain, plaintiff did not mention that he had struck his knee on August 31, 2001 throughout this time. Plaintiff was released to return to full duty work without restrictions on September 28, 2001.
4. On September 28, 2001 instead of returning to work, plaintiff sought treatment with his primary care physician, Dr. Hiran Patel who ordered an x-ray and referred plaintiff to Dr. Robert Logel, an orthopaedic specialist, and Dr. Dickson Schaefer, an orthopaedic surgeon, at Fayetteville Orthopaedic Clinic, who was not aware plaintiff had been treated by Dr. Todd. Consequently, he did not obtain Dr. Todd's medical reports.
5. Plaintiff was seen by Dr. Logel on September 27, 2001 and was diagnosed with an injury to his right patella with questionable fracture of his bipartite patella, a developmental deformity where the patella does not fuse, which then gives the appearance of an extra bone. Dr. Logel's partner, Dr. Schaefer, provided conservative treatment. An MRI performed on October 2, 2001 revealed a bipartite patella with normal variant, but was otherwise unremarkable. Plaintiff returned to Fayetteville Orthopedic Clinic on October 8, 2001 and was released to return to work without restrictions and to return as needed for his knee pain.
6. On August 31, 2001 plaintiff was performing his regular duties in his usual and customary manner and there was not an interruption of his normal work routine by an untoward event which resulted in an injury to his knee.
7. Plaintiff returned to full duty work on or about October 10, 2001 and continued to work until April 26, 2002 without incident.
8. Over six months later, on April 26, 2002 plaintiff sustained an interruption of his normal work routine when he was involved in a motor vehicle accident while in the course and scope of his employment with defendant.
9. Plaintiff immediately sought medical treatment with Dr. J. D.McAllister of Doctor's Urgent Care for his complaints of right wrist pain, bilateral shoulder pain and lower back pain. X-rays of plaintiff's cervical and lumbar spine and right wrist revealed no abnormalities. Plaintiff made no complaints of right knee pain.
10. On May 1, 2002 plaintiff returned to Dr. McAllister with complaints of low back pain and that his right knee made a popping sound when he bent it. An x-ray of plaintiff's right knee revealed no focal bony lesion. Dr. McAllister released plaintiff to return to work light duty on May 7, 2002.
11. On May 7, 2002 instead of returning to work, plaintiff sought treatment at the Fayetteville Orthopedic Clinic for right knee pain whose onset plaintiff now alleged was due to the motor vehicle accident of April 26, 2002. Dr. Logel reviewed an x-ray taken of plaintiff's right knee and found no acute patella fractures but noted that plaintiff was developing chronic changes around the bipartite patella which needed to be excised before causing further erosive changes. Dr. Logel referred plaintiff again to Dr. Schaefer.
12. On May 21, 2002 plaintiff was seen by Dr. Schaefer who noted recurring knee pain which plaintiff alleged occurred since the accident of April 26, 2002. Dr. Schaefer recommended excising the non-united portion of plaintiff's patella and performing an arthroscopic surgery on plaintiff's right knee.
13. On June 24, 2002 Dr. Schaefer performed surgery on plaintiff's right knee to excise the bipartite fragment of his right patella. On July 11, 2002 plaintiff was seen by Dr. Schaefer in a follow-up appointment. At that time Dr. Schaefer instructed plaintiff to work on his range of motion and strengthening his right knee. Dr. Schaefer referred plaintiff to Dr. Logel and removed plaintiff from work until September 1, 2002.
14. On September 1, 2002 plaintiff returned to work for defendant at the same or greater average weekly wage and has continued to work for defendant since that time.
15. Contemporaneously with the treatment by Dr. McAllister, plaintiff treated with Steven Costa, a chiropractor with the Lumberton Chiropractic Center, on thirty separate occasions from April 27, 2002, the day following the motor vehicle accident, until January of 2003 for complaints of pain in his right arm and shoulder, upper back, lower back and stiffness in his neck. During this period Mr. Costa treated independent problems with symptoms in the same area: cervical symptoms of radiiculitis, manifesting pain the right shoulder; acromioclaricular joint pain which indicates inflammation, a sprain of the AC join, or a separation of the joint; and right trapezial muscle pain which extends more toward the mid-back area. Mr. Costa, D.C. opined plaintiff was totally disabled due to neck and back pain for the three weeks immediately following the motor vehicle accident of April 26, 2002 after which time he should have been able to resume normal activities. Mr. Costa, D.C. examined plaintiff's right shoulder on April 27, 2002 and indicated that flexion and abduction were noted to be limited but there was no evidence of acute rotator cuff tear or dislocation. As plaintiff continued treatment over the course of the first five months with Mr. Costa, D.C., he noted that plaintiff's shoulder condition appeared to benefit from therapy and was improving and "nearing normal limits." By September 26, 2002 plaintiff's shoulder problems resolved and the shoulder returned to a normal range of motion without symptoms or difficulties. However, because plaintiff continued with complaints of pain in the cervical area, and there was no evidence of an acute rotation cuff tear. Mr. Costa, D.C. assigned a 5% permanent partial impairment rating to plaintiff's cervical spine condition resulting from the motor vehicle accident and opined that plaintiff is capable of resuming normal activities. Plaintiff continued to work until mid-January 2003.
16. On January 7, 2003 plaintiff returned to Dr. Schaefer for a follow-up appointment. Plaintiff reported no difficulty with his right knee and Dr. Schaefer released plaintiff to return to work without restrictions regarding his right knee. Plaintiff complained that he was now suffering from right elbow pain. Dr. Schaefer diagnosed lateral epicondylitis of the right elbow but did not relate this condition to the motor vehicle accident of April 26, 2002 since plaintiff said he had no specific trauma to the elbow, the pain came on gradually, and plaintiff did not relate the elbow pain to the motor vehicle accident. The doctor noted that plaintiff said the pain was worse with the pushing and pulling-type motion. Dr. Schaefer would not agree that the elbow pain was brought on due to over-compensating because of shoulder pain, as this is not typical of the development of lateral epicondylitis.
17. On February 18, 2003 plaintiff returned to Dr. Schaefer indicating the elbow pain had lessened but not completely resolved. On this visit plaintiff complained of right shoulder pain, stating he "had had no trauma to the shoulder" and the pain "came on somewhat gradually." The doctor noted plaintiff "uses his shoulder quite a lot at work, as he unloads commercial trucks." An x-ray did not reveal at this time degenerative joint disease or a rotator cuff tear. Dr. Shaefer diagnosed rotator cuff tendonitis, but was of the opinion that plaintiff's shoulder pain did not result from the motor vehicle accident of April 26, 2002. When confronted with Dr. Speer's opinion that plaintiff had a torn rotator cuff, Dr. Shaefer agreed he could have had a partial tear. However, he would not agree that plaintiff's shoulder condition was causally related to the motor vehicle accident of April 26, 2002 and stated he "had no idea what he's [Dr. Speer's] basing that on."
18. On February 27, 2003, almost a year after the motor vehicle accident, plaintiff sought treatment for his shoulder with orthopedic surgeon Dr. Kevin Speer. Plaintiff reported to Dr. Speer that his shoulder had been symptomatic since the motor vehicle accident of April 26, 2002. Dr. Speer did not review any records of Mr. Costa, D.C. or Dr. Shaefer or any of plaintiff's other physicians. Based solely on the history given to him by plaintiff, Dr. Speer relates plaintiff's shoulder pain and injury to the motor vehicle accident of April 26, 2002. An MRI performed on March 11, 2003 revealed plaintiff suffered from partial supraspinatus tear. Notably, Dr. Speer admits that nothing in the MRI report or his examination allowed him to make any conclusions regarding the causation of plaintiff's partial rotator cuff tear. When confronted with the fact that Mr. Costa, D.C. found no evidence of a rotator cuff tear as of September 2002, which was closer in time to the motor vehicle accident, Dr. Speer refused to admit that his opinion regarding the causation of plaintiff's rotator cuff tear could be incorrect. Based on all the medical testimony, the opinion of Dr. Speer regarding the causal relation between plaintiff's right shoulder partial tear of the rotator cuff and the motor vehicle accident of April 26, 2002 is given less weight than the opinions of Mr. Costa, D.C. and Dr. Shaefer, an orthopedic surgeon, both of whom had seen plaintiff over a long period of time which was closer in time to the motor vehicle accident. Mr. Costa D.C. first saw plaintiff the day following the motor vehicle accident and Dr. Shaefer saw him for his prior knee problems even earlier and followed him after the motor vehicle accident.
19. As a consequence of the compensable motor vehicle accident plaintiff was unable to earn the same or greater wages at the time of the accident in the same or any other employment from April 27, 2002 and for three weeks subsequent due to resultant back and neck pain. Any inability to earn wages thereafter was not work-related but due to plaintiff's non work-related knee injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Since plaintiff failed to prove that on August 31, 2001 he sustained a compensable injury by accident arising out of and in the scope of his employment with defendant, resulting in injury to plaintiff's right knee, plaintiff's claim for benefits is hereby denied. N.C. Gen. Stat. §97-2(6).
2. Since plaintiff sustained compensable injuries to his neck and back on April 26, 2002 as a consequence of a motor vehicle accident while in the course and scope of his employment and was totally disabled for three weeks following the accident, he is entitled to benefits at the weekly rate of $543.35 for three weeks. Any subsequent disability was not a result of a work-related condition. N.C. Gen. Stat. §§ 97-2(6), 97-29.
3. As a result of the compensable injury by accident of April 26, 2002 plaintiff is entitled to all reasonably necessary medical treatment for his neck and back for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19);97-25, 97-25.1.
4. Plaintiff is entitled to 15 weeks of permanent partial disability at a weekly compensation rate of $543.35 for the 5% cervical impairment he sustained as a result of the compensable motor vehicle accident of April 26, 2002. N.C. Gen. Stat. § 97-31(23).
5. Plaintiff failed to prove that he sustained an injury to his right knee, developed lateral epicondylitis of the right elbow or that he sustained a right shoulder injury as a result of the motor vehicle accident of April 26, 2002. Consequently, plaintiff is entitled to no medical treatment for injury to his right knee, his lateral epicondylitis of the right elbow or for his right shoulder condition under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(6), 97-2(19), 97-25, 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiff's claim for benefits due to his alleged injury by accident of August 31, 2001 resulting in knee problems, must be and is hereby DENIED.
2. Defendant shall pay plaintiff three weeks of total disability benefits at a weekly compensation rated of $543.35 as a result of his compensable neck and back injuries due to the motor vehicle accident of April 26, 2002, subject to a reasonable attorney's fee award in Paragraph 6.
3. Plaintiff's claims for benefits due to his alleged right knee injury, right elbow lateral epicondylitis and his right shoulder condition allegedly resulting from the compensable motor vehicle accident of April 26, 2002 must be and are hereby DENIED.
4. Defendant shall pay all reasonably necessary medical treatment for plaintiff's neck and back injuries from the motor vehicle accident of April 26, 2002 for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. Defendant is not responsible for medical bills for treatment of his right knee, right elbow or right shoulder which are not related to this compensable injury by accident of April 26, 2002.
5. Defendant shall pay plaintiff 15 weeks of permanent partial disability compensation at a weekly rate of $543.35 for his 5% cervical impairment which he sustained as a result of the compensable motor vehicle accident of April 26, 2002, subject to a reasonable attorney's fee award in Paragraph 6.
6. An attorney's fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded to plaintiff and paid directly to counsel for plaintiff.
7. Each side shall bear its own costs.
This the 17th day of October 2005.
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/ ______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER